**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| DARCY CHURCH, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | Case No: |
| | CLASS ACTION |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| AHMAD R. CHATILA, and BRIAN WUEBBELS, | **COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** |
| Defendants. | |

Plaintiff Darcy Church ("Plaintiff"), individually and on behalf of all other persons similarly situated, by her undersigned attorneys, for her Complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and her own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Securities and Exchange Commission ("SEC") filings by SunEdison, Inc. ("SunEdison") as well as media and reports about the Company and information readily available on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1.       This is a federal securities class action on behalf of a class consisting of all persons and entities, other than Defendants (defined below) and their affiliates, who purchased or held the publicly traded securities of Vivint Solar, Inc. ("Vivint" or the "Company") between July 20, 2015 and March 7, 2016, both dates inclusive (the "Class Period"), seeking to recover compensable

damages caused by Defendants' violations of federal securities laws and pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      In July 2015, SunEdison and Vivint reached a merger agreement for SunEdison to acquire Vivint (the "Merger Agreement"). Even as they spent the next nine months reassuring Vivint shareholders that the merger transaction would be completed, boosting Vivint's stock price, Defendants knew SunEdison could not obtain the necessary financing and accordingly knew the merger transaction would not be completed.

## JURISDICTION AND VENUE

3.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. § 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

4.      This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

5.      Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this District.

6.      In connection with the acts, conduct and other wrongs alleged herein, Defendants either directly or indirectly used the means and instrumentalities of interstate commerce, including but not limited to the United States mails, interstate telephone communications, and the facilities of the national securities exchange.

## PARTIES

7.      Plaintiff, as set forth in the attached Certification, acquired Vivint securities at artificially inflated prices during the Class Period and was damaged when the merger of Vivint and SunEdison was terminated.

8.      Defendant Ahmad R. Chatila ("Chatila") served at all relevant times as the Chief Executive Officer ("CEO") of SunEdison.

9.      Defendant Brian Wuebbels ("Wuebbels") served at all relevant times as the Chief Financial Officer ("CFO") of SunEdison.

10.     Defendants Chatila and Wuebbels are sometimes referred to herein collectively as the "Defendants."

11.     The Defendants:

a.      directly participated in the management of the Company;

b.      were directly involved in the day-to-day operations of the Company at the highest levels;

c.      were privy to confidential proprietary information concerning the Company and its business and operations;

d.      were directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

e.      were directly or indirectly involved in the oversight or implementation of the Company's internal controls;

f.      were aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

g.      approved or ratified these statements in violation of the federal securities laws.

12.     Non-party SunEdison is a Delaware corporation headquartered at 13736 Riverport Dr., Maryland Heights, Missouri. SunEdison securities trade on the New York Stock Exchange ("NYSE") under the ticker symbol "SUNE." SunEdison is a renewable energy development company that develops, finances, installs, owns and operates renewable power plants. SunEdison also delivers electricity to residential, commercial, governmental and utility customers.

13.     Non-party Vivint is a Delaware corporation headquartered at 3301 N. Thanksgiving Way, Suite 500, Lehi, Utah. Vivint securities trade on the NYSE under the ticker symbol "VSLR". Vivint is a provider of distributed solar energy which is electricity generated by a solar energy system installed at a customer's location including residential, commercial and industrial properties throughout the United States.

14.     Non-party TerraForm Power, Inc. ("TerraForm Power" or "TERP") is a Delaware corporation headquartered in Maryland. SunEdison is TerraForm Power's parent and controlling shareholder.

## SUBSTANTIVE ALLEGATIONS

### Defendants' False and Misleading Class Period Statements

15.     The Class Period begins on July 20, 2015, when SunEdison and Vivint announced that the two companies signed the Merger Agreement to which SunEdison will acquire Vivint for $16.50 per Vivint share, consisting of cash and SunEdison stock. The press release stated in relevant part:

**SunEdison And TerraForm Power Announce Definitive Agreement To Acquire Vivint Solar For $2.2 Billion**

**- SunEdison to acquire Vivint Solar, to drop down 523 MW rooftop solar portfolio to TerraForm Power**
**- Accelerates SunEdison's expansion to become the leading global residential and commercial solar provider**
**- TerraForm Power to acquire 523 MW rooftop solar portfolio with expected unlevered annual CAFD of $81 million, generating attractive 9.5% 10-year average levered cash-on-cash yield**
**- Rooftop solar portfolio offers attractive CAFD profile and predictable drop down flow**
**- SunEdison initiates 2016 guidance of 4,200 MW to 4,500 MW delivered, a 50 percent year-on-year increase over previous 2016 outlook of 2,800 MW to 3,000 MW**
**- TerraForm Power raises 2016 DPS guidance from $1.70 to $1.75 and initiates 2017 guidance of $2.05, up from previous target of $2.00**

MARYLAND HEIGHTS, Mo., LEHI, Utah and BETHESDA, Md., July 20, 2015 /PRNewswire/ -- SunEdison, Inc. (NYSE: SUNE), the world's largest renewable energy development company, Vivint Solar (NYSE: VSLR), a leading provider of residential solar systems in the United States, and TerraForm Power, Inc. (together with its subsidiaries, TerraForm Power) (Nasdaq: TERP), an owner and operator of clean energy power plants, **today announced that SunEdison and Vivint Solar have signed a definitive merger agreement pursuant to which SunEdison will acquire Vivint Solar for approximately $2.2 billion, payable in a combination of cash, shares of SunEdison common stock and SunEdison convertible notes.**

\*     \*     \*

**Platform Expansion Continues with Strong Execution**

**"SunEdison's acquisition of Vivint Solar is a logical next step in the transformation of our platform after the successful execution of our First Wind acquisition in January 2015," said Ahmad Chatila, SunEdison chief executive officer and TerraForm Power chairman.** **"We expect the Vivint Solar transaction to create significant value for our stockholders through the accretion in our TerraForm Power ownership, the acceleration of our Incentive Distribution Rights and an immediate expansion of our capacity and bandwidth to grow our residential business in the U.S. and globally**. As of the fourth quarter of 2015, our organic growth and recent acquisitions will put SunEdison on track to deploy more than 1 gigawatt per quarter."

**"This transaction with SunEdison delivers to Vivint Solar's stockholders excellent value for the business we have built over the last four years," said Greg Butterfield, Vivint Solar's chief executive officer.** "SunEdison and TerraForm Power have built a unique model that recognizes the value of long-term, predictable, contracted cash flows from our residential solar portfolio while providing access to a broad pool of financing at an attractive cost of capital. We are excited to join the SunEdison residential and small commercial team which has successfully developed a wide range of channels complementing those at Vivint Solar, both in the U.S. and globally."

\*     \*     \*

**SunEdison Initiates 2016 Guidance**

Concurrent with today's announcement, SunEdison initiated 2016 annual guidance of 4,200 MW to 4,500 MW, a 50 percent increase from its prior outlook of 2,800 MW to 3,000 MW.

\*   \*   \*

**Terms of Transaction and Financing**

***Under the merger agreement, Vivint Solar stockholders will receive $16.50 per share, consisting of $9.89 per share in cash, $3.31 per share in SunEdison stock, and $3.30 per share in SunEdison convertible notes.***  The $2.2 billion acquisition price is based on approximately 115 million Vivint Solar shares outstanding after inclusion of employee stock options and restricted stock units that will vest upon the completion of the acquisition, the repayment of approximately $263 million of Vivint Solar debt and the payment of transaction costs. SunEdison expects that Vivint Solar will have approximately $100 million of cash on its balance sheet at the time of closing.  ***SunEdison expects to issue approximately $370 million of its common stock and approximately $350 million of SunEdison convertible notes to Vivint Solar stockholders as merger consideration.***

The number of SunEdison shares to be received by Vivint Solar stockholders in the merger will be determined based upon the volume weighted average price per share of SunEdison common stock for the 30 consecutive trading days ending on (and including) the third trading day immediately prior to completion of the merger (the "Measurement Price"), subject to a collar.  ***As a result of the collar, Vivint Solar stockholders will receive no more than 0.120 shares of SunEdison common stock and no less than 0.098 shares for each of their Vivint Solar shares.  As part of the merger consideration, Vivint stockholders also will receive five-year notes convertible into SunEdison shares, which will be issued by SunEdison pursuant to an Indenture between SunEdison and a trustee.  The convertible notes will be issuable only in registered form without coupons and will be direct, unsecured, senior obligations of SunEdison.  The conversion price for these convertible notes will be 140 percent of the Measurement Price (but the Measurement Price may not exceed $33.62 or be lower than $27.51).  The convertible notes will bear interest at a rate of 2.25% per year, payable semiannually in arrears in cash.***

The merger requires the approval of Vivint Solar stockholders.  313 Acquisition LLC, which owns approximately 77 percent of the outstanding Vivint Solar shares, has entered into a voting agreement with SunEdison pursuant to which 313 Acquisition LLC has agreed, among other things, to vote in favor of the adoption of the merger agreement, subject to certain termination events, including, among others, termination of the merger agreement.  In addition, 313 Acquisition LLC has also executed a lock-up agreement that imposes certain restrictions on its ability to sell or transfer directly or indirectly, any of the SunEdison convertible notes issued to it in the merger or any SunEdison common stock that is received upon a conversion of the SunEdison convertible notes for a specified period of time following the closing of the transaction.

The merger is subject to the notification and reporting requirements under the Hart-Scott-Rodino Act, registration under the Securities Act of 1933 of the SunEdison common stock and convertible notes to be received by Vivint Solar stockholders in the merger, and the satisfaction of other customary closing conditions. The transaction is expected to close in the fourth quarter of 2015.

***SunEdison intends to fund the cash portion of the merger consideration primarily from the proceeds of a new $500 million secured debt facility and the completion of the $922 million sale of assets to TerraForm Power. However, completion of the merger with Vivint Solar is not conditioned on consummation of the new debt facility or of any other third-party financing or the completion of the asset purchase by TerraForm Power.*** If SunEdison were unable to obtain the funding needed to complete the merger at a time when all other conditions to the merger are satisfied, SunEdison could be liable for breach and be subject to customary remedies, including contract damages.

***To support the merger transaction, SunEdison has entered into a commitment letter with Goldman Sachs Bank USA for a $500 million secured term loan facility to be provided to a wholly-owned, indirect subsidiary of SunEdison which will hold certain development assets of the expanded SunEdison RSC platform after the merger with Vivint Solar.*** The funding of the term facility is subject to customary conditions, including the negotiation of definitive documentation and other customary closing conditions.

TerraForm Power has entered into a debt commitment letter with Goldman Sachs Bank USA for a $960 million unsecured bridge facility. The funding of the bridge facility is subject to the negotiation of definitive documentation and other customary closing conditions. The TERP Purchase Agreement is not conditioned on TerraForm Power's receipt of the new unsecured bridge facility or any other third-party financing.

(Emphases added).

16.     On this announcement of the Merger Agreement between SunEdison and Vivint, Vivint's stock price increased $4.87, an increase of approximately 44.8%, to close at $15.75, just shy of the $16.50 merger price.

17.     On August 6, 2015, SunEdison filed a Form 10-Q for the quarter ending June 30, 2015 (the "2Q15 10-Q") with the SEC, announcing the Company's financial and operating results for the quarter ending June 30, 2015. Attached to the 2Q15 10-Q were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Chatila and Wuebbels attesting to the accuracy of the financial statements and effectiveness of internal controls.

18.     The 2Q15 10-Q discussed SunEdison's liquidity, stating in relevant part:

 *We believe our liquidity will be sufficient to support our operations for the next twelve months[.]*

(Emphasis added).

19.     On November 9, 2015, SunEdison filed a Form 10-Q for the quarter ending September 30, 2015 (the "3Q15 10-Q") with the SEC, announcing the Company's financial and operating results for the quarter ending September 30, 2015.  Attached to the 3Q15 10-Q were certifications pursuant to SOX signed by Defendants Chatila and Wuebbels attesting to the accuracy of the financial statements and effectiveness of internal controls.

20.     The 3Q15 10-Q discussed SunEdison's Liquidity, stating in relevant part:

As of September 30, 2015, *SunEdison had access to $1.3 billion in cash and cash equivalents*[.]

*      *      *

 *[W]e believe that the sources of liquidity described below will be sufficient to support our operations for the next twelve months*[.]

(Emphasis added).

21.     The 3Q15 10-Q discussed the Vivint acquisition, stating in relevant part:

 *Vivint Solar*
On July 20, 2015, SunEdison and Vivint Solar, Inc. ("Vivint Solar") entered into an Agreement and Plan of Merger, dated as of July 20, 2015 (as it may be amended from time to time, the "Merger Agreement"), by and among SunEdison, SEV Merger Sub Inc., a Delaware corporation and a wholly owned subsidiary of SunEdison ("Merger Sub"), and Vivint Solar, pursuant to which SunEdison will acquire Vivint Solar for total consideration currently estimated at approximately $1.6 billion, payable in a combination of cash, shares of SunEdison common stock and SunEdison convertible notes to be issued in connection with the Merger. Final closing of this acquisition, which is subject to approval by Vivint Solar's shareholders, is expected by the fourth quarter of 2015 or the first quarter of 2016.
In addition, on July 20, 2015, in connection with its entry into the Merger Agreement, SunEdison entered into a purchase agreement (the "TERP Purchase Agreement") with a subsidiary of TERP, pursuant to which SunEdison will sell to TERP (the "TERP Acquisition") certain renewable assets constituting Vivint

Solar's rooftop solar portfolio (the "Vivint Operating Assets"), consisting of up to 523 MW as of December 31, 2015, which would be valued at up to $922 million in cash including an advance for projects expected to be acquired from SunEdison following the consummation of the TERP Acquisition (in the form of an interest-bearing, short-term note). ***We intend to fund the cash portion of the merger consideration primarily from the proceeds of a new $500 million secured debt facility and the completion of the TERP Acquisition. We have entered into a commitment letter with Goldman Sachs Bank USA for a $500 million secured term loan facility.*** The funding of the term facility is subject to the negotiation of definitive documentation and other customary closing conditions.

*        *        *

***Vivint Term Loan Commitment***
***On July 20, 2015, SunEdison entered into a debt commitment letter in connection with the Merger. The agreement was amended on August 5, 2015, pursuant to which, among other things, the parties have committed to provide, subject to certain terms and conditions, a $500 million secured term loan facility to a wholly owned indirect subsidiary of SunEdison. The funding of the term loan facility is subject to customary conditions, including the negotiation of definitive documentation and other customary closing conditions.***

*        *        *

*Vivint Solar Bridge Facility*
On July 20, 2015, TERP obtained commitments for a senior unsecured bridge facility which provides TERP with up to $960 million to fund the acquisition of the Vivint Solar Operating Assets (see Note 3). Amortization of deferred financing costs recorded as interest expense related to this bridge facility was $5 million during the three and nine months ended September 30, 2015.

*        *        *

On July 20, 2015, SunEdison and Vivint Solar, Inc. ("Vivint Solar") entered into an Agreement and Plan of Merger, dated as of July 20, 2015 (as it may be amended from time to time, the "Merger Agreement"), by and among SunEdison, SEV Merger Sub Inc., a Delaware corporation and a wholly owned subsidiary of SunEdison ("Merger Sub"), and Vivint Solar, pursuant to which SunEdison will acquire Vivint Solar for total consideration currently estimated at approximately $1.6 billion, payable in a combination of cash, shares of SunEdison common stock and SunEdison convertible notes to be issued in connection with the Merger.

*        *        *

*Financing of the Vivint Solar Merger*
On July 20, 2015, in connection with SunEdison's acquisition of Vivint Solar, TERP entered into a definitive purchase agreement with SunEdison to acquire the Vivint Operating Assets, which is expected to be completed in the fourth quarter of 2015 or the first quarter of 2016, for up to $922 million. TERP intends to finance

the TERP Acquisition with existing cash, availability under TERP's revolving credit facility and the assumption of project-level debt. On July 20, 2015, TERP obtained commitments for a senior unsecured bridge facility which provides TERP with up to $960 million to fund the acquisition of the Vivint Operating Assets, including related transaction costs, if the intended financing plan discussed above cannot be achieved. In addition, TERP has agreed to use the net proceeds received from a refinancing of approximately 175 million British Pounds ("GBP") (equivalent of $271 million) of existing project-level indebtedness by entering into a new GBP 315 million (equivalent of $488 million) facility to reduce the commitment under the senior unsecured bridge facility.

(Emphasis added).

22.     On November 10, 2015, SunEdison held a conference call to discuss earnings from the third quarter of 2015. SunEdison's liquidity was discussed on a slide from the investor presentation stating "$1.4 billion Cash at parent," and Defendant Wuebbels stated on the call in relevant part:

> *[W]e have sufficient liquidity at the Devco* [SunEdison, independent of its subsidiaries TERP and TerraForm Global, Inc.] *with approximately $1.4 billion as of the end of the quarter.*

(Emphasis added).

23.     On December 9, 2015, SunEdison and Vivint released a joint press release stating that they had agreed to amend the Merger Agreement. The press release stated in relevant part:

**SunEdison And Vivint Solar Reach Agreement To Amend Definitive Merger Agreement To Acquire Vivint Solar; Blackstone-Sponsored Vehicle To Become Key Stakeholder And Commits To Provide $250 Million Credit Facility**

MARYLAND HEIGHTS, Missouri, LEHI, Utah and NEW YORK, Dec. 9, 2015 /PRNewswire/ --

**Highlights:**

- Vivint Solar transaction modifications
- $2.00/share reduction in cash consideration;
- $0.75/share increase in stock consideration; and
- At Vivint Solar's option, and with the consent of the Blackstone-sponsored vehicle, public stockholders of Vivint Solar may be paid all cash consideration; if such option is exercised, Blackstone-sponsored vehicle will accept stock and

convertible notes of SunEdison in lieu of a substantial portion of the cash it would have otherwise been entitled to receive in the merger.

- Blackstone-sponsored vehicle to become a leading shareholder of SunEdison
  o Commitment to provide $250 million credit facility to fund business growth
- Transaction expected to close in the first quarter of 2016

SunEdison, Inc. (NYSE: SUNE) ("SunEdison"), the largest global renewable energy development company, and Vivint Solar, Inc. (NYSE: VSLR) ("Vivint Solar"), a leading provider of residential solar systems in the United States, have **reached an agreement to amend and modify the terms of the definitive merger agreement previously announced on July 20, 2015. In conjunction therewith, SunEdison also announced today that 313 Acquisition LLC ("313 Acquisition"), the vehicle controlled by private equity funds managed by Blackstone (NYSE: BX) ("Blackstone"), has entered into a commitment to provide a $250 million credit facility to fund the ongoing growth of SunEdison. The merger is anticipated to close in the first quarter of 2016.**

**"SunEdison is very pleased to reach an agreement with Vivint Solar and 313 Acquisition to modify the merger agreement. Given the recent market volatility, we believe the modified agreement is in the best interest of all parties. We look forward to growing our residential and small commercial business with Greg Butterfield and his exceptional team," said Ahmad Chatila, SunEdison's chief executive officer. "In addition, we are also delighted to add the Blackstone team as a key new stakeholder and partner."**

\*   \*   \*

**Terms of Transaction and Financing**

**Under the terms of the amended merger agreement, Vivint Solar stockholders will receive merger consideration per share consisting of $7.89 per share in cash without interest, plus the number of shares of SunEdison common stock they would have received under the terms of the original deal (presently 0.120 shares of SunEdison common stock per share of Vivint Solar common stock based on the application of the collar), plus an additional number of shares of SunEdison common stock intended to have a value equal to $0.75, plus $3.30 in principal amount of SunEdison convertible notes (modified from the original deal to have a maturity of four years rather than five years).** This represents a reduction in the cash merger consideration to be received by Vivint Solar stockholders of $2.00 per share from the original deal and an increase in SunEdison common stock of $0.75 per share. In order to render the transaction into an all-cash deal for the public stockholders of Vivint Solar, and thereby facilitate a closing more quickly than would be the case if the SunEdison common stock and convertible notes otherwise issuable to the public stockholders had to go through the SEC registration process in connection with filing the Proxy Statement/Form S-4, Vivint Solar, with the consent of 313 Acquisition, may elect to have the

consideration payable to the Vivint Solar stockholders, other than 313 Acquisition (the "Public Stockholders"), to be paid in all cash. Under this option, the Public Stockholders would receive, for each share of Vivint Solar common stock, (i) $7.89 per share in cash and (ii) an additional cash amount representing the fair market value of the convertible note consideration and the stock consideration otherwise payable to the Public Stockholders in the merger as determined by Vivint Solar (and as approved by Vivint Solar's board of directors in consultation with outside counsel and an independent financial advisor). In contrast, 313 Acquisition would receive additional consideration consisting of all of the SunEdison common stock and SunEdison convertible notes that would otherwise have been payable to the Public Stockholders, and would bear a corresponding reduction in the aggregate amount of cash it receives as merger consideration equal to the amount of additional cash that will be paid to the Public Stockholders. Such election may be made prior to the Securities and Exchange Commission (the "SEC") declaring effective the Proxy Statement/Form S-4 to be filed by SunEdison and Vivint Solar in respect of the merger and in any event no later than 75 days following the date of the amendment to the merger agreement (or such earlier date on which Vivint Solar informs SunEdison in writing that it does not intend to exercise the election).

The number of shares of SunEdison common stock received by the Vivint Solar stockholders for each share of Vivint Solar common stock will consist of (i) the number of shares of SunEdison common stock having a value determined under the original merger agreement, which based on the current trading price of the SunEdison common stock would be capped at 0.120 shares of SunEdison common stock per share of Vivint Solar common stock, and (ii) the number of additional shares having a value of $0.75 per share of Vivint Solar common stock based upon the volume weighted average price per share of SunEdison common stock (rounded down to the nearest cent) on the New York Stock Exchange ("NYSE") for the five (5) consecutive trading days ending on (and including) the second trading day immediately prior to completion of the merger. As part of the merger consideration, Vivint Solar stockholders will also receive convertible notes that may be converted into shares of SunEdison common stock, which will be issued by SunEdison pursuant to an Indenture between SunEdison and a trustee. The convertible notes will be direct, unsecured, senior obligations of SunEdison. The initial conversion price for these convertible notes will be 140 percent of the Signing Measurement Price (as defined in the amended merger agreement, but the Signing Measurement Price for such purpose may not exceed $33.62 or be lower than $27.51). Based on the current trading price of SunEdison common stock and given the application of such collar, such initial conversion price would be $38.51. The convertible notes will bear interest at a rate of 2.25% per year, payable semiannually in arrears in cash, and will have a maturity date that is four years from the date of issuance.

The amended merger agreement provides that in no event will SunEdison be required to complete the merger or consummate the transactions contemplated thereby prior to January 29, 2016.

\*   \*   \*

In connection with the amendment of the merger agreement, SunEdison and TerraForm Power, LLC ("TerraForm Power") have amended and restated their existing purchase agreement (the "Amended TERP Purchase Agreement") to provide that concurrently with the completion of SunEdison's acquisition of Vivint Solar, TerraForm Power will acquire Vivint Solar's then-installed rooftop solar portfolio for a purchase price expected to be approximately $799 million based on the number of installed megawatts ("MW") expected to be delivered at closing, subject to reduction based on any solar portfolio debt assumed by TerraForm Power. The actual purchase price will be based on the actual MW acquired by TerraForm Power (up to a maximum of 523 MW) on the date the transaction closes.

SunEdison has also entered into a letter agreement with TerraForm Power, pursuant to which SunEdison has agreed, among other things, to use its reasonable best efforts to sell to third-party purchasers (x) certain solar residential systems expected to be sold to TerraForm Power pursuant to a take/pay agreement to be entered into and (y) Purchased Subsidiaries (as defined in the Amended TERP Purchase Agreement) to be acquired from Vivint Solar and expected to be sold to TerraForm Power pursuant to the Amended TERP Purchase Agreement, subject to certain conditions. Upon the completion of a sale of any Purchased Subsidiary, if the closing of the transactions contemplated by the Merger Agreement has occurred, TerraForm Power will be relieved of its obligation to purchase the Purchased Subsidiaries that it has not otherwise purchased in connection with the closing and no purchase price will be paid with respect to such Purchased Subsidiaries.

The merger requires the approval of a majority of the Vivint Solar stockholders. 313 Acquisition has entered into an amended and restated voting agreement with SunEdison pursuant to which 313 Acquisition has reaffirmed its agreement to vote in favor of the adoption of the merger agreement or to deliver a written consent, as the holder of a majority of the outstanding shares of Vivint Solar common stock, approving and adopting the merger agreement, subject to certain termination events, including, among others, termination of the merger agreement.

If Vivint Solar does not exercise its right to have its Public Stockholders receive all cash consideration, the closing of the merger is subject to the SEC declaring effective SunEdison's registration statement on Form S-4 covering the SunEdison common stock and convertible notes to be received by Vivint Solar stockholders in the Merger as a prospectus in which the proxy statement of Vivint Solar will be included and the satisfaction of other customary closing

conditions. If the Public Stockholders receive all cash consideration in lieu of a mix of cash, SunEdison common stock and convertible notes, the effectiveness of SunEdison's registration statement on Form S-4 will not be a condition to closing.

Concurrently with the execution of the amendment to the merger agreement, SunEdison and 313 Acquisition entered into a registration rights agreement, pursuant to which, subject to the terms thereof, SunEdison has granted certain registration rights in favor of 313 Acquisition that will be applicable if Vivint Solar elects to exercise its right to have the Public Stockholders receive all cash consideration.

***SunEdison intends to fund the cash portion of the merger consideration primarily from the proceeds of a new $300 million secured debt facility described below and the completion of the sale of assets to TerraForm Power pursuant to the Amended TERP Purchase Agreement.*** However, completion of the merger is not conditioned on consummation of the new debt facility or of any other third-party financing or the completion of the asset purchase by TerraForm Power. If SunEdison is unable to obtain the funding needed to complete the merger at a time when all other conditions to the merger are satisfied, SunEdison could be liable for breach and be subject to remedies described in the amended merger agreement, including contract damages based on the economic terms of the original merger agreement.

***To support the merger transaction, SunEdison has entered into a second amended and restated commitment letter with Goldman Sachs Bank USA, Barclays Bank PLC, Citigroup Global Markets Inc. and UBS Securities LLC for a $300 million secured term loan facility the "Term Facility") to be provided to a wholly-owned, indirect subsidiary of SunEdison (the "Term Borrower") that will hold certain development assets of the expanded SunEdison residential and small commercial platform following the merger with Vivint Solar. The funding of the Term Facility is subject to customary conditions, including the negotiation of definitive documentation and other customary closing conditions.***

TerraForm Power has entered into a second amended and restated debt commitment letter with Goldman Sachs Bank USA, Citigroup Global Markets Inc., Barclays Bank PLC and UBS AG, Stamford Branch for a $795 million unsecured bridge facility. The funding of the bridge facility is subject to the negotiation of definitive documentation and other customary closing conditions. The Amended TERP Purchase Agreement is not conditioned on TerraForm Power's receipt of the new unsecured bridge facility or any other third-party financing.

(Emphasis added).

24.     On January 25, 2016, Vivint filed its Proxy Statement for the shareholder vote on its acquisition by SunEdison.

25.     On February 24, 2016, at the special shareholders meeting, Vivint shareholders voted to approve merger for Vivint to be acquired by SunEdison.

26.     The statements referenced in ¶¶ 15-25 were materially false and/or misleading because they misrepresented and/or failed to disclose the following adverse facts pertaining to the Company's business and operations which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1)  SunEdison would be unable to obtain financing for the acquisitions of Vivint; (2) SunEdison's liquidity was less than Defendants were stating; (3) SunEdison would not be able to complete the acquisition of Vivint; and (4) as a result, Defendants' statements about the merger between SunEdison and Vivint were materially false and misleading and/or lacked a reasonable basis at all relevant times.

## THE TRUTH EMERGES

27.      On February 29, 2016, after the market closed, SunEdison filed a Notification of Late Filing on Form 12b-25 with the SEC, disclosing that the Company would be unable to timely file its Annual Report on Form 10-K for the fiscal year ended December 31, 2015. The Notification of Late Filing included information that in late 2015, former executives made allegations concerning the accuracy of SunEdison's financial position, stating in relevant part:

> based on allegations made by former executives of the Company concerning the accuracy of the Company's anticipated financial position previously disclosed to the Company's Board of Directors (the "Board"). [...]The Audit Committee, mindful of the current challenges faced by the industry and the Company, has also recently initiated an investigation concerning the accuracy of the Company's anticipated financial position based on certain additional issues raised by a current and a former employee of the Company.

28.     On this news, shares of Vivint fell $1.37 per share or over 17% from the stock's previous closing price to close at $6.52 per share on March 1, 2016, damaging investors.

29.     On March 2, 2016, during trading hours, *The Wall Street Journal* published an article entitled, "SunEdison's Takeover of Vivint Solar in Jeopardy as Banks Balk" stating that the merger was in jeopardy, stating in relevant part:

> ***SunEdison Inc.'s mounting financial woes have jeopardized its purchase of rooftop-solar company Vivint Solar Inc.***
>
> ***Goldman Sachs Group Inc., Barclays PLC, Citigroup Inc. and UBS Group AG have balked at providing loans they had committed to fund the takeover, according to people familiar with the matter. The banks have told SunEdison its failure to provide them with up-to-date financial statements mean it hasn't fulfilled a condition of the loan agreement, the people said.***
>
> SunEdison said in a regulatory filing Monday that it would delay its 2015 earnings report while its board investigates claims from a former and a current employee challenging the accuracy of the company's financial disclosures.
>
> SunEdison said it has found no wrongdoing. The review is still under way and could require the company to "reassess its liquidity position," SunEdison said. A company spokesman declined to comment further Wednesday.
>
> If the Vivint deal hasn't closed by March 18, either side could walk away. SunEdison could line up alternative financing sources for the deal, though its sunken stock price could make it difficult to do so.
>
> SunEdison shares plunged 23% Tuesday before regaining ground Wednesday, recently trading at around $1.70. The stock has lost more than 90% of its value since midsummer on investor concerns about the Vivint transaction and a slide in oil prices that has dragged down energy stocks.
>
> When the deal was announced in July 2015, it was worth $1.9 billion. SunEdison and Vivint later renegotiated the deal, reducing the cash portion. And Vivint's majority shareholder, Blackstone Group LP, agreed to take stock in lieu of cash and to provide SunEdison with a $250 million credit line.
>
> Vivint stockholders, who approved the deal last week, would receive $7.89 a share in cash plus other securities. Its shares were trading around $6.81 Wednesday afternoon.
>
> (Emphasis added).

30.     On this news, shares of Vivint fell $1.63 per share or 25% from the stock's previous closing price to close at $4.89 per share on March 2, 2016, damaging investors.

31.     On March 8, 2016, Vivint announced that it was terminating the Merger Agreement stating in relevant part:

> **Vivint Solar Terminates Merger Agreement for SunEdison's Breach**
>
> LEHI, Utah, March 8, 2016 /PRNewswire/ -- Vivint Solar (NYSE: VSLR) announced this morning that it had delivered a letter to SunEdison, Inc. last night notifying it that, as ***a result of SunEdison's failure to meet its obligations under the merger agreement pursuant to which the Company was to have been acquired by SunEdison, Vivint Solar has terminated such agreement.*** Vivint Solar reserves all rights under the merger agreement.  In particular, SunEdison's failure to consummate the merger when required pursuant to the terms of the merger agreement constitutes a willful breach of the merger agreement, and Vivint Solar intends to seek all legal remedies available to it in respect of such willful breach.
>
> (Emphasis added).

32.     On March 8, 2016, Vivint filed a lawsuit against SunEdison in Delaware Chancery Court alleging breach of contract.

33.      On this news, shares of Vivint fell $1.04 per share or approximately 20% from the stock's previous closing price to close at $5.21 per share on March 7, 2016, damaging investors.

## RELEVANT POST-CLASS PERIOD DISCLOSURES

34.     On March 31, 2016, after the market closed, SunEdison announced in a Form 8-K filed with the SEC that it had received a subpoena from the U.S. Department of Justice and a similar inquiry from the SEC  regarding its deal to buy Vivint. The 8-K states in relevant part:

> On March 28, 2016, SunEdison, Inc. (the "Company") received a subpoena from the U.S. Department of Justice (the "DOJ") seeking information and documentation relating to: (i) ***certain financing activities in connection with the Company's acquisition of Vivint Solar, Inc., (ii) the conduct of a former non-executive employee who is alleged to have committed wrongdoing in connection with the Vivint termination negotiations,*** (iii) the previously disclosed investigations by the Company's audit committee, (iv) intercompany transactions involving the Company and each of TerraForm Power Inc. and TerraForm Global Inc. and (v) the financing of the Company's Uruguay projects in connection with project costs and equity contributions that remain to be contributed by the Company and the DOJ may have additional requests. A***lso, the Company has received a nonpublic, informal inquiry from Securities and Exchange Commission (the "SEC")***

*covering similar areas.* The Company and the board of directors intend to cooperate with the DOJ's inquiry and the SEC investigation.

(Emphasis added).

35.     On this news, shares of Vivint fell $0.10 per share, or approximately 3.8%, from the stock's previous closing price to close at $2.55 per share on April 1, 2016, damaging investors.

36.     On April 3, 2016, TerraForm Global, Inc. ("TerraForm Global"), a subsidiary of SunEdison, filed a lawsuit against SunEdison, Defendant Chatila and others in Delaware Chancery Court alleging breach of fiduciary duty, breach of contract, and unjust enrichment claiming that SunEdison had misappropriated $231 million in cash from TerraForm Global supposedly in order to facilitate SunEdison's completion of certain renewable-energy projects in India and to secure a transfer of SunEdison's equity interests in these projects to TerraForm Global in the near term in compliance with SunEdison's contractual obligations.

37.     On news of the TerraForm Global lawsuit, shares of Vivint fell $0.13 per share, or over 5%, from the stock's previous closing price to close at $2.42 per share on April 4, 2016, damaging investors.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

38.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Vivint securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

39.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Vivint securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or

thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Vivint or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

40.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

41.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

42.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

       a.     whether the federal securities laws were violated by Defendants' acts as alleged herein;

       b.     whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of SunEdison;

       c.     whether the Individual Defendants caused SunEdison to issue false and misleading financial statements during the Class Period;

       d.     whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

       e.     whether the prices of Vivint securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

       f.     whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

43.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to redress individually the wrongs done to them. There will be no difficulty in the management of this action as a class action.

44.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

a.      Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

b.      the omissions and misrepresentations were material;

c.      Vivint securities are traded in an efficient market;

d.      the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

e.      Vivint traded on the NYSE and was covered by multiple analysts;

f.      the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

g.      Plaintiff and members of the Class purchased, acquired and/or sold Vivint securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

45.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

46.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

**FIRST CAUSE OF ACTION**

**Violation of Section 10(b) of The Exchange Act Against and Rule 10b-5
Promulgated Thereunder Against All Defendants**

47.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

48.     This cause of action is asserted against all Defendants.

49.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to, and throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase and/or sell Vivint securities at artificially inflated and/or distorted prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, individually and as a group, took the actions set forth herein.

50.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the merger between SunEdison and Vivint as specified herein.

51.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Vivint's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about SunEdison and its business operations and financial condition in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers Vivint securities during the Class Period.

52.     The Individual Defendants' primary liability, and controlling persons liability, arise from the following: (a) Individual Defendants were each a high-level executive, director, and/or

agent at the Company during the Class Period and members of the Company's management team or had control thereof; (b) by virtue of their responsibilities and activities as a senior officer and/or director of the Company, were privy to and participated in the creation, development and reporting of the Company's plans, projections and/or reports; (c) Individual Defendants enjoyed significant personal contact and familiarity with the other members of the Company's management team, internal reports and other data and information about the Company's, operations, and (d) Individual Defendants were aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

53.     Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing SunEdison's financial condition from the investing public and supporting the artificially inflated or distorted price of Vivint's securities. As demonstrated by Defendants' false and misleading statements during the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by failing to take steps necessary to discover whether those statements were false or misleading.

54.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price for Vivint securities was artificially inflated during the Class Period.

55.     In ignorance of the fact that market prices of Vivint's publicly-traded securities were artificially inflated or distorted, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the Company's securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during

the Class Period, Plaintiff and the other members of the Class acquired Vivint's securities during the Class Period at artificially high or distorted prices and were damaged thereby.

56.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding SunEdison's financial results and condition, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired Vivint securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices or distorted prices at which they did.

57.     By virtue of the foregoing, the Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

58.     As a direct and proximate result of the Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

59.     This action was filed within two years of discovery of the fraud and within five years of Plaintiff's purchases of securities giving rise to the cause of action.

## SECOND CAUSE OF ACTION

### Violation of Section 20(a) of The Exchange Act
### Against Individual Defendant

60.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

61.     This second cause of action is asserted against the Individual Defendants.

62.     The Individual Defendants acted as controlling persons of SunEdison within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, agency, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of aspects of the Company's dissemination of information to the investing public, the Individual Defendants had the power to influence and

control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contend are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the SunEdison's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued, and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

63.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

64.     As set forth above, the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.

65.     By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act as they culpably participated in the fraud alleged herein. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

66.     This action was filed within two years of discovery of the fraud and within five years of Plaintiff's purchases of securities giving rise to the cause of action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

a.     Determining that this action is a proper class action, designating Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Class Counsel;

b.     Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants'

wrongdoing, in an amount to be proven at trial, including interest thereon;

      c.      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

      d.      Awarding such other and further relief as the Court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: May 3, 2016                Respectfully submitted,

**WEHRLE LAW LLC**

By:  /s/ Chris Wehrle_____
Chris Wehrle, #45592MO
9909 Clayton Road
Suite 226
St. Louis, Missouri 63124
Telephone: (314) 254-0111
Facsimile: (314) 216-3700
Email: chris@wehrlelaw.com

**POMERANTZ LLP**
Jeremy A. Lieberman
J. Alexander Hood II
Marc Gorrie
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:     (212) 661-1100
Facsimile:     (212) 661-8665
Email:  jalieberman@pomlaw.com
         ahood@pomlaw.com
         mgorrie@pomlaw.com

*Counsel for Plaintiff*

**BRONSTEIN, GEWIRTZ & GROSSMAN**
Peretz Bronstein, Esq.
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Fax: (212) 697-7296
peretz@bgandg.com

*Additional Counsel for Plaintiff*